UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Anthony Chatman,

      Plaintiff,

vs.                                            Case No. 3:06-cv-1005-J-32MCR

National Railroad Passenger Corporation, d/b/a
Amtrak,

      Defendant.
_____/

## **O R D E R**

**THIS CAUSE** is before the Court on Plaintiff's Motion to Compel (Doc. 15) filed October 22, 2007. Defendant filed a response in opposition on November 5, 2007. (Doc. 22). Accordingly, the matter is ripe for judicial review.

### **I. BACKGROUND**

On November 16, 2006, Plaintiff filed an action alleging racial discrimination and retaliation in violation of 42 U.S.C. §1981. (Doc. 1). Essentially, the complaint alleges Defendant subjected Plaintiff to discrimination and harassment on the basis of his race and that Plaintiff's employment was ultimately terminated in retaliation for complaining of racial discrimination. Id. Specifically, Plaintiff began working for Defendant in October 1998 as a locomotive engineer in Los Angeles, California. Id. In February 2000, Plaintiff claimed a position in Sanford, Florida, however, prior to beginning work in that new position, Plaintiff was informed he had been awarded the position in error and he should claim one of the six vacant positions in Jacksonville, Florida. Id. When

Plaintiff arrived in Jacksonville, he was informed by two supervisors, Frank Large and Darrell Murray, that there were no available positions in Jacksonville and the two supervisors allegedly made racially derogatory statements. Id. Plaintiff complained to his union and eventually was awarded a position in Jacksonville. Id. According to Plaintiff, he was subjected to racially motivated harassment by Large and Murray. Id. In April 2001, Plaintiff complained to the Assistant General Manager of the Jacksonville Division, Tom Fortune, about the harassment. Id. Unfortunately, the harassment continued and in October 2001, Plaintiff filed a charge of discrimination with the Jacksonville Human Rights Commission and the Equal Employment Opportunity Commission (the "EEOC"). Id. Plaintiff claims the harassment continued until September 2005 when Plaintiff received a termination letter for his alleged failure to report an injury and dishonesty. Id.

On June 12, 2007, Plaintiff served Defendant with his first set of interrogatories and his first requests for production. (Doc. 15, Ex. C). On August 2, 2007, Defendant responded to these discovery requests (Doc. 15, Ex. D) and Plaintiff now challenges these responses as being incomplete.

## II. DISCUSSION

Motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court. See Commercial Union Ins. Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984). The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party. See Westrope, 730 F.2d at 731.

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result.  See United States v. Proctor & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983 (1958).  Discovery is intended to operate with minimal judicial supervision unless a dispute arises and one of the parties files a motion requiring judicial intervention.  Furthermore, "[d]iscovery in this district should be practiced with a spirit of cooperation and civility."  Middle District Discovery (2001) at 1.

In the instant motion, Plaintiff claims that several of Defendant's responses to his discovery requests are deficient.  Additionally, Plaintiff complains that the verification to the interrogatories is not in compliance with the Federal Rules of Civil Procedure.  The Court will address each of Plaintiff's contentions separately.

### A.     Defendant's Responses to Plaintiff's Interrogatories and Requests to Produce

Plaintiff complains that Defendant did not adequately respond to Interrogatory 6, Request for Production No. 6, Request for Production No. 7 and Request for Production No. 8.  (Doc. 15).  Specifically, Plaintiff contends Defendant improperly limited the geographical and temporal restrictions in its response to these discovery requests. These requests seek information regarding other claims of racial discrimination against Amtrak employees.  Interrogatory 6 and Request for Production No. 6 seek information regarding all claims of racial discrimination against Amtrak employees in the Southern Division from 1999 to the present.  Defendant responded by providing information regarding complaints against Frank Large, Tom Fortune and Darryl Murray in the

Jacksonville District from 2000 to the present.  Request for Production No. 7 seeks documents regarding complaints of racial discrimination against employees in the Jacksonville branch office from 1999 to the present.  Again, Defendant limited its response to complaints against Large, Fortune and Murray from 2000 to the present.  Finally, Request for Production No. 8 seeks documents regarding complaints of racial discrimination against Fortune, Large, Murray, Jay MacArthur or Joseph Wall regardless of time period.  Once again, Defendant limited its response to complaints against Large, Fortune and Murray from 2000 to the present.  Plaintiff now takes the position that Defendant should be required to fully respond to the discovery requests.

Plaintiff argues that the temporal limitations on his discovery requests are reasonable.  Interrogatory 6, Request for Production No. 6 and Request for Production No. 7 only seek information going back to 1999 and Plaintiff claims he was first subjected to discriminatory/demeaning statements in 1999 when he went to Jacksonville to apply for a position.  Defendant, on the other hand, argues that the "most significant employment decision in this case was the termination of Plaintiff's employment," which occurred September 21, 2005.  (Doc. 22, p.14).  Therefore, Defendant claims that its limitation of production from 2000 to the present (five years before Plaintiff's termination) is more than reasonable.  Both parties acknowledge that courts routinely grant discovery regarding other instances of employment discrimination for a reasonable length of time.  As Plaintiff points out, courts have held that discovery "several year prior to the alleged discriminatory conduct is reasonable."  (Doc. 15, p.11).  Plaintiff cites to several cases holding that going back three to four years prior to the

-4-

alleged discriminatory conduct constitutes a reasonable time limitation.  In the instant case, Plaintiff alleges he was subjected to discriminatory conduct going back to as early as 1999.  The Court sees no reason to use Plaintiff's termination as the date from which to limit discovery.  Indeed, Defendant has cited no authority for its position that the Court should use Plaintiff's termination as the date from which to limit discovery.  Instead, it appears Plaintiff was subjected to discrimination/harassment throughout his employment in Jacksonville and indeed, he filed a charge of discrimination with the EEOC in October 2001.  As such, the Court agrees with Plaintiff that the time limitation from 1999 to the present is reasonable and directs Defendant to provide information going back to 1999 for Interrogatory 6, Request for Production No. 6 and Request for Production No. 7.

In Plaintiff's Request for Production No. 8, however, Plaintiff seeks documents regarding complaints of racial discrimination against Fortune, Large, Murray, Jay MacArthur or Joseph Wall with no time limitation.  Interestingly, Plaintiff does not cite to any caselaw permitting such discovery without time limitations.  Instead, as noted above, Plaintiff cites to cases permitting discovery three to four years prior to the alleged discriminatory conduct.  Plaintiff seems to argue that because Request for Production No. 8 seeks documents relating to supervisors, somehow he should be permitted to obtain discovery with no time limitation.  The Court does not agree.  Instead, the Court again believes Plaintiff should be permitted discovery regarding other complaints of discrimination going back to 1999.

With respect to the geographical limitation, Plaintiff argues his requests only seek information from Plaintiff's employing division, the Southern Division, and therefore are reasonable.  Defendant responds that Plaintiff's employing unit was the Jacksonville District, rather than the entire Southern Division, which encompasses Raleigh, New Orleans, Jacksonville, as well as Auto Train and Passenger Services.  Plaintiff takes the position that he should be permitted to obtain information and documents of other claims of discrimination in the Southern Division because General Superintendent, Joseph Wall (who oversees the entire Southern Division), made the determination to terminate Plaintiff's employment as is evidenced by his signature on Plaintiff's termination letter.  (Doc. 15, pp. 13-14).  Defendant contends that Mr. Wall does not participate in the day-to-day operations of the various districts located in the Southern Division.  (Doc. 22, p.4).  Indeed, Defendant points out that each geographical district in the Southern Division is managed by an Assistant Superintendent of Operations, who reports to a Superintendent of Operations, who then reports to Mr. Wall.  Id.  At the time of Plaintiff's employment, the Assistant Superintendent of Operations for the Jacksonville district was Tom Fortune, who reported to the Superintendent of Operations, Jay MacArthur, who oversaw the three geographical districts and reported to Mr. Wall.  Id.

Defendant further explains that Mr. Wall did not participate in the decision to terminate Plaintiff's employment, other than to sign the termination letter. (Doc. 22, p.5). Instead, Defendant explains that the decision to terminate Plaintiff's employment was part of a process that commenced with a formal charge, an investigation and a hearing,

all conducted by the local managers (Fortune, Large and Murray).  Id.  After the Hearing Officer made a determination that Plaintiff was guilty of the offense in the charge, Fortune's recommendation to terminate Plaintiff's employment was approved by Mr. MacArthur and Mr. Wall then signed the termination letter.  Id.

Plaintiff argues that he needs discovery from the entire Southern Division to show that the decision makers in the Southern Division had a retaliatory motive or intent and failed to take measures to provide a workplace free of discrimination.  (Doc. 15, pp. 14-15).  The only evidence Plaintiff presents to support his contention that the higher-level management of the Southern Division was involved in the decision to terminate his employment is the fact that Mr. Wall signed Plaintiff's termination letter.  (Doc. 15, pp. 13-14).  However, as Defendant points out, the recommendation to terminate Plaintiff's employment was made by Mr. Fortune, the Assistant General Manager of the Jacksonville District.  Accordingly, the motive and intent at issue is that of Mr. Fortune. While Fortune's recommendation may have been considered and eventually approved by Mr. MacArthur and Mr. Wall, this is not sufficient to expand the scope of discovery to include the entire Southern Division.  See Kapoor v. Indiana University Bd. of Trustees, 2007 WL 2901881 (S.D. Ind. 2007) (unpublished) (court limited discovery to department where plaintiff worked despite fact that recommendation for termination was considered and accepted by "high-level administrators" who "might have played a similar role with regard to residents in other departments").  Likewise, the fact that MacArthur approved the recommendation (after the Hearing Officer found Plaintiff had engaged in improper conduct) and Wall signed the termination letter is not sufficient to permit discovery of

any complaint of racial discrimination in the Southern Division or any complaint against either MacArthur or Wall.

"In order to expand discovery beyond the local unit, the plaintiff must make some showing of particularized need and likely relevancy." Wells v. Xpedx, 2007 WL 1200955 (M.D. Fla. 2007) (unpublished). Plaintiff attempts to make this showing by arguing "[e]vidence that decision-makers in the Southern Division had a retaliatory motive or intent or failed to take measures to provide a workplace free from discrimination would rebut" Defendant's affirmative defense that it had no retaliatory motive and took measures to provide a workplace free of discrimination. (Doc. 15, pp. 14-15). This is essentially the same reason Plaintiff offers for the discovery in the first place and as discussed above, the motive and/or intent at issue in this case is that of Mr. Fortune who made the recommendation to terminate Plaintiff's employment. As for rebutting any claim that Defendant took measures to provide a workplace free from discrimination, the Court believes Plaintiff can attempt to rebut this claim using the information he obtains from the Jacksonville District.

Additionally, Plaintiff argues he is seeking punitive damages and that "[e]vidence that supervisors at the Southern Division level engaged in discriminatory conduct or failed to remedy known discriminatory conduct of their employees could be evidence sufficient to support a finding that those in higher management countenanced or approved unlawful discriminatory behavior of their employees." (Doc. 15, p.15). To support this contention, Plaintiff cites to the case, Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1280 (11th Cir. 2002). In Miller, however, the court noted that:

> "punitive damages will ordinarily not be assessed against employers with only constructive knowledge" of harassment; rather, punitive damages may only be considered in cases where the "discriminating employee was high[ ] up the corporate hierarchy" or where "higher management countenanced or approved [his] behavior."

Id. (internal citations omitted).  Plaintiff is not alleging that either Wall, MacArthur or any other high level management employee engaged in discriminatory conduct toward him.  Accordingly, Plaintiff must be arguing that higher management approved of the conduct of the individuals who subjected Plaintiff to discrimination.  What Plaintiff fails to illustrate, however, is how upper management's conduct toward other claims of discrimination would help him prove that upper management approved of the conduct at issue in his case.  As such, the Court finds this argument also fails to show particularized need or relevancy.  Therefore, the Court finds no reason to extend permissible discovery beyond Plaintiff's employment unit, the Jacksonville District.

With respect to Interrogatory 6, Request for Production No. 6 and Request for Production No. 7, the Court directs Defendant to produce information regarding any complaints, claims and/or charges of racial discriminatory conduct caused by **any** employee located in the Jacksonville District from 1999 to the present.  While Defendant limited its response to the supervisory employees in the Jacksonville District, the Court believes that based on allegations made by Plaintiff, there may be relevant information regarding discrimination claims brought against other non-supervisory employees located in the Jacksonville District.  With respect to Request for Production No. 8, Defendant will have already produced any documents regarding complaints against Messrs Fortune, Large and Murray from 1999 to the present and as noted above, the

Court will not require Defendant to produce documents regarding Messrs MacArthur and Wall. Defendant shall produce the additional information to Plaintiff no later than **Wednesday, December 5, 2007**.

### B. Defendant's Interrogatory Verification

Plaintiff also alleges that Defendant's interrogatory verification is not in compliance with federal rules because it was signed by a legal assistant for Defendant rather than an officer or manager with authority to bind the company and because it contains qualifying language that Defendant reserves the right to make changes to its responses. (Doc. 15, pp. 17-18). Defendant responds that having a paralegal of Defendant sign the interrogatories is proper and that the qualifying language is also proper because Rule 26 not only allows but obliges the parties to supplement and correct errors. (Doc. 22, pp. 14-15).

> Rule 33 provides:
>
>> Without leave of court . . ., any party may serve upon any other party written interrogatories, . . . to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by any officer or agent, who shall furnish such information as is available to the party.

Rule 33(a), Fed.R.Civ.P. The rule simply requires a corporate party to designate an agent to answer and sign the interrogatory responses. It is not necessary that the agent be an officer or managing agent of the corporation. United States v. 3963 Bottles, More or Less, Enerjol Double Strength, 265 F.2d 332, 336 (7th Cir. 1959). The Court understands Plaintiff's concern, however, in designating its paralegal as its agent, Defendant has caused itself to be bound by her responses and is estopped from

-10-

denying her authority to speak for Defendant, even though she might not otherwise have been competent to so bind the corporation.  See Holler v. General Motors Corp., 3 F.R.D. 296, 298 (E.D. Mo. 1944).

In support of his contention that the verification by a paralegal is improper, Plaintiff cites to Fonville v. District of Columbia, 230 F.R.D. 38, 45 (D. D.C. 2005).  In that case, the court found that a verification by a paralegal was "utterly improper," however, the court failed to identify why it was so improper.  The court noted that the responses were required to be signed by "a representative of [the defendant] who attests to their truth on behalf of the [defendant]." Id.  Here, it is the Court's understanding that the paralegal is an employee of Defendant (not the law firm representing Defendant) and the undersigned sees no reason the paralegal cannot be the designated agent to bind Defendant with her responses.

As for the qualifying language, while it is not necessary for interrogatory responses to contain such language, it is not improper.  Under Rule 26, the parties have an obligation to seasonably amend their responses to an interrogatory if they learn a response is incomplete or incorrect.  Rule 26(e)(2), Fed.R.Civ.P.  The qualifying language in Defendant's verification does nothing more than reflect this obligation.

Accordingly, after due consideration, it is

**ORDERED**:

Plaintiff's Motion to Compel (Doc. 15) is **GRANTED** in part and **DENIED** in part as stated in the body of this Order.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  21st  day of November, 2007.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record